IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ESTATE OF TERRILL J. THOMAS, by and through its special administrator, Tiffany Robertson, | )<br>)<br>) Case No.: 17-CV-01128 |
| Plaintiff, | ) Honorable Pamela Pepper |
| v. | ) |
| MILWAUKEE COUNTY, et al., | ) |
| Defendants. | ) |
| MILWAUKEE COUNTY, | ) |
| Third-Party Plaintiff, | ) |
| v. | ) |
| WISCONSIN COUNTY MUTUAL INSURANCE COMPANY, | ) |
| Third-Party Defendant. | |

**MILWAUKEE COUNTY'S THIRD-PARTY COMPLAINT
FOR DECLARATORY JUDGMENT**

Defendant and Third-Party Plaintiff, the County of Milwaukee (the "County"), asserts the following allegations and claim for declaratory relief against Third-Party Defendant, Wisconsin County Mutual Insurance Corporation ("WCMIC"), pursuant to Federal Rule of Civil Procedure 14(a).

**NATURE OF THE ACTION**

1. This Third-Party Complaint is brought by the County to resolve a dispute between WCMIC and the County regarding the scope of the coverage provided by an insurance policy issued by WCMIC to the County, Policy No. 14116 ("the Policy").

2. Although the Policy provides coverage for the indemnification claim asserted by Plaintiff Estate of Terrill J. Thomas against the County in the Complaint in this action, WCMIC has indicated its intent to invoke certain Policy exclusions to deny indemnification to the County under the Policy. Specifically, it is clear that, in the event that the individual defendants in this case are ultimately determined to have committed criminal or wrongful acts during the scope of their employment for the County, as alleged in Plaintiff's Complaint, then WCMIC intends to deny coverage to the County by imputing such conduct to the County and invoking the Policy exclusions that exclude coverage for the deliberate commission of an act, omission, or breach of duty and the willful, intentional, or knowing violation a penal statute (the "penal exclusions").

3. WCMIC has already invoked this "imputation" theory to deny the County coverage for a similar indemnification claim asserted by a plaintiff in another federal lawsuit, *Martin v. County of Milwaukee*, No. 14-cv-200 (E.D. Wis.). In denying coverage to the County in that case, WCMIC imputed certain wrongful conduct of an individual defendant County employee to the County, and denied coverage under the applicable policy's penal exclusions, which are identical to the Policy language applicable in this case. WCMIC's denial of coverage in that matter remains in dispute. WCMIC has now indicated its intent to take the same coverage position on the indemnification claim asserted by Plaintiff against the County in this case.

4. WCMIC's interpretation of the Policy's penal exclusions as allowing it to impute wrongful or criminal conduct of County employees to the County to deny coverage is improper and without any basis. In fact, the penal exclusions themselves make clear on their face that the exclusions should be applied directly *opposite* to WCMIC's position—*i.e.*, any wrongful or criminal conduct that County employees are found to have committed in the scope of their employment is *not* to be imputed to the County for purposes of the application of the exclusions.

5. One of the Policy exclusions on which WCMIC relies, which is set forth in Section V, subsection L.3 of the Policy, expressly makes clear that "any fact pertaining to any one *insured* shall not be imputed to any other *insured* for the purpose of determining the application of this exclusion."

6. Likewise, another Policy exclusion on which WCMIC relies, which is set forth in Section V, subsections N.3 and N.4 of the Policy, expressly provides that "any fact pertaining to any one *insured* shall not be imputed to any other *insured* for the purpose of determining the application of . . . this exclusion."

7. Other Policy provisions further make clear that WCMIC cannot deny coverage to the County under the exclusions simply by imputing any wrongful or criminal conduct of County employees to the County.

8. Accordingly, this Third-Party Complaint seeks a declaration that: (i) Plaintiff's indemnification claim against the County in this case is covered under WCMIC's insurance policy coverage provisions and, in the absence of any application of any Policy exclusion, WCMIC is obligated under the Policy to indemnify the County for the indemnification claim; and (ii) in interpreting and applying the Policy exclusions in Section V, subsections L.3, N.3, and N.4 of the Policy, any conduct found to have been committed by a County employee cannot be imputed to the County where the conduct constitutes a willful, intentional, or knowing violation of any penal statute, or consent to such a violation, or constitutes a wrongful act, omission, or breach of duty, or consent to any such act or omission.

## PARTIES

9. Third-Party Plaintiff, the County, is a Wisconsin municipal corporation, with its principal place of business located at 901 North Ninth Street, Milwaukee, Wisconsin 53045.

10. Third-Party Defendant, WCMIC, is a domestic corporation authorized and licensed to do business in the State of Wisconsin for purposes of issuing insurance coverage policies, using David Bisek of Aegis Corporation as its registered agent, doing business at offices located at 18550 West Capitol Drive, Brookfield, Wisconsin 53045.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over the underlying civil rights action pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over declaratory judgment actions pursuant to 28 U.S.C. §§ 2201 and 2202 and supplemental jurisdiction over all other related claims that form part of the same case or controversy pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims herein took place in this judicial district, and because the Third-Party Defendant, WCMIC, resides in this judicial district under 28 U.S.C. § 1391(d).

## FACTS

**I.     Plaintiff's Indemnification Claim Falls Within the Coverage Provisions of the Policy**

    **A.     The Policy**

13. In January 2016, WCMIC issued a Public Entity Liability Insurance Policy to the County, Policy No. 14116, effective January 1, 2016 to January 1, 2017 ("the Policy"). A copy of the Policy is attached hereto as Exhibit 1.

14. The Policy is occurrence-based and has a limit of liability of $10,000,000, inclusive of deductibles in the amounts of $1,000,000 per occurrence or offense and $3,000,000 in annual aggregate. *See* Policy Declarations and Deductible Liability Insurance Endorsement, attached hereto as Exhibit 1.

4

15. Under the Policy, WCMIC undertook a duty to defend the County against any claims that fall within the coverage and to indemnify the County for any damages the County becomes legally obligated to pay that fall within the coverage.

### B. The County is a Separate Insured under the Policy

16. The Named Insured as shown in the Declaration is the County. The Policy covers not only the County but also County employees and officials. Specifically, the Policy lists the following as an *insured*: (1) the County; and (2) the County's past and present employees or elected or appointed officials while acting within the scope of their employment. *See* Policy, Section III.

17. The Policy contains a "Separation of *Insureds*" provision which provides that each *insured*'s interests are separately covered: "Except with respect to the Limit of Insurance, and any rights or duties specifically assigned to the first Named Insured [the County], this insurance applies . . . [s]eparately to each *insured* against whom *claim* is made or *suit* is brought." *Id*. at Section VII, subsection I.

18. The Policy makes clear that when the words *you* and *your* are used in the Policy, that refers to the Named Insured, the County. The Policy also makes clear that when the words *we*, *us* and *our* are used, those words refer to WCMIC. Other words and phrases that appear in italics have special meaning and are defined in Section VI of the Policy. *See* Policy at 1.

### C. Plaintiff's Indemnification Claim Falls within the Coverage Provisions

19. Plaintiff's indemnification claim falls within one or more categories of coverage provided by the Policy.

20. The Policy provides for three broad categories of coverage to each *insured*: (A) Coverage A - *Bodily Injury* and *Property Damage* caused by an *occurrence*; (B) Coverage B - *Personal Injury*; and (C) Coverage C - *Errors and Omissions*. *See id*. at Sections I-II.

5

21. Section VI of the Policy provides the following definitions:

> B. *Bodily injury* means *bodily injury*, sickness, disability or disease, sustained by a person during the policy period, including death resulting from any of these at any time.
>
> \*\*\*
>
> F. *Errors and Omissions* means any misstatement or misleading statement or act or omission or neglect or breach of duty during the policy period, including misfeasance, malfeasance and nonfeasance by an *insured* in their capacity as such.
>
> \*\*\*
>
> K. *Occurrence* means an event, including continuous and repeated exposure to the same general harmful conditions, the *insured* neither expected nor intended. Expectations or intentions of any one *insured* shall not be imputed to any other *insured*.
>
> \*\*\*
>
> L. *Personal injury* means injury, other than *bodily injury*, during the policy period arising out of one or more of the following offenses:
>
> 1. False arrest, detention or imprisonment, defective service of process;
> 2. Malicious prosecution;
> 3. Wrongful entry or eviction, or other invasion of the right of private occupancy;
> 4. Libel, slander, or defamation of character;
> 5. Sexual harassment, including workplace harassment;
> 6. Assault and battery, including *sexual molestation*;
> 7. Discrimination, including employment discrimination;
> 8. Other civil rights violations, including employment-related violations.

22. For each of the three categories of coverage provided under the Policy, WCMIC has both a duty to defend and a duty to indemnify. *See id.* at Sections I-II.

23. Section I sets forth WCMIC's duty to indemnify:

> *We* will pay on behalf of the *insured* those sums that that *insured* becomes legally obligated to pay as damages because of:
>
> > Coverage A – *Bodily Injury* and *Property Damage* caused by an *occurrence*
> > Coverage B – *Personal Injury*
> > Coverage C – *Errors and Omissions*

24. Section II sets forth WCMIC's duty to defend:

> *We* have the right and duty to defend any *suit* against the *insured* seeking monetary damages and/or plaintiffs attorneys fees on account of *bodily*

6

> *injury*, *personal injury*, *property damage* or *errors and omissions* or any combination thereof to which this insurance applies, but:
>
> 1. The amount *we* will pay for damages is limited as described in Section IV – Limits of Insurance;
>
> 2. *We* may, at *our* discretion, investigate any *occurrence* or *offense* and settle any *claim* or *suit* that may result even if the settlement amount is exclusively within the *insured's* deductible, and
>
> 3. Our right and duty to defend end when *we* have used up the Limit of Insurance in the payment of judgments or settlements under Coverages A, B or C. This applies to both *claims* and *suits* pending at the time the Limit of Insurance is used up and those filed thereafter.
>
> *Defense costs* are payable in addition to the policy limit and only after any applicable deductible has been exhausted by payment of *damages* or *defense costs*.

25. Plaintiff's indemnification claim seeks monetary damages from the County on account of *bodily injury*, *personal injury*, *errors and omissions*, or any combination thereof to which the insurance applies. Therefore, in the absence of the application of any Policy exclusions, WCMIC has duty to defend the County on the indemnification claim.

26. WCMIC acknowledged its duty to defend the County against Plaintiff's indemnification claim when it accepted the County's tender of claim and appointed counsel to represent the County.

27. Plaintiff alleges in the Complaint that the County Defendants violated Terrill J. Thomas's constitutional rights, resulting in emotional harm, physical suffering, and death. The alleged injuries fall within one or more of the categories of coverage.

28. Any damages the County becomes liable to pay under the indemnification claim will be because of *bodily injury*, *personal injury* and/or *errors and omissions*. Therefore, in the absence of the application of any Policy exclusions, WCMIC has a duty to indemnify the County on Plaintiff's indemnification claim.

7

**II. WCMIC Has Indicated its Intent to Deny Indemnification to the County by Imputing the Alleged Wrongful Conduct of County Employees to the County and Invoking Policy Exclusions Based on that Imputation**

29. In *Martin*, WCMIC imputed certain wrongful conduct of a County employee to the County and then invoked a Policy exclusion based on that imputation in order to deny coverage to the County for the plaintiff's indemnification claim against the County in that case.

30. WCMIC has indicated to the County that it intends to take the same coverage position here as it took in *Martin.* To the extent any County employee is found to have committed any wrongful or criminal conduct within the scope of his or her employment in this case, WCMIC intends to impute any such conduct to the County, invoke the same Policy exclusions it invoked in *Martin*, and deny coverage to the County for the indemnification claim in Plaintiff's Complaint.

**A. WCMIC's Denial of Coverage to the County in *Martin***

31. In December 2012, WCMIC issued a Public Entity Liability Insurance Policy to the County, effective January 1, 2013 to January 1, 2014 (the "Martin Policy"). A copy of the Martin Policy is attached hereto as Exhibit 2.

32. In *Martin*, the plaintiff, a County inmate, alleged that a County employee, Xander D. Thicklen, sexually assaulted her in 2013 while she was in County custody. Based on her allegations, the claims the plaintiff asserted included a claim against defendant Thicklen under 42 U.S.C. § 1983 for a violation of the Fourteenth Amendment through sexual assault, as well a state law indemnification claim against the County.

33. The County timely tendered the *Martin* lawsuit to WCMIC for defense and indemnification under the Martin Policy, and WCMIC accepted the County's tender of the claim without any reservation of rights.

34. Defendant Thicklen also tendered the *Martin* lawsuit to WCMIC for defense and indemnification under the Martin Policy as a separate insured. WCMIC accepted the tender of the claim by defendant Thicklen, but subject to a reservation of rights.

35. WCMIC intervened in *Martin*, filing an Intervening Complaint for Declaratory Judgment which sought a declaration that it had no duty to defend or indemnify defendant Thicklen for the claims asserted against him.

36. WCMIC moved for summary judgment on its intervening complaint, arguing in part that, pursuant to the penal exclusion set forth in Section V, subsection L.3 of the Martin Policy, as a matter of law it had no duty to defend or indemnify Thicklen for the claims against him in *Martin*. The penal exclusion stated that the policy does not apply to personal injury "[a]rising out of the intentional or knowing violation of a penal statute or ordinance committed by or with the consent of the *insured*." WCMIC argued, and the *Martin* court found, that the alleged sexual assault by defendant Thicklen constituted an "intentional or knowing violation of a penal statute" committed by defendant Thicklen and, thus, pursuant to the penal exclusion, defendant Thicklen was not entitled to coverage for the claims against him.

37. In March 2017, after the *Martin* case had been pending for some time, and well after the summary judgment ruling in *Martin* in WCMIC's favor on its intervening complaint, WCMIC sent a letter to the County asserting that, in the event that defendant Thicklen was found at trial to have committed criminal acts in the scope of his employment for the County, WCMIC would invoke the penal exclusion, and the summary judgment ruling in its favor, as a basis not to indemnify the County for the plaintiff's indemnification claim. WCMIC's letter did not dispute that the indemnification claim fell within the personal injury coverage provided under the policy. Rather, WCMIC took the position that any wrongful conduct committed by defendant Thicklen in the scope of his employment would be imputed to the County and provide a basis to invoke the

9

penal exclusion as a basis to deny personal injury coverage to the County for the indemnification claim the plaintiff had asserted against the County.

38. The jury in *Martin* found defendant Thicklen liable for violating Martin's constitutional rights, awarded Martin $6.7 million in damages, and found that the County was liable to pay the $6.7 million award under the plaintiff's indemnification claim.

39. Following the *Martin* verdict, WCMIC continues to reassert its denial of indemnity to the County on the indemnification claim. WCMIC's denial of indemnity to the County is based on imputing defendant Thicklen's conduct to the County and invoking the penal exclusion against the County based solely on that imputation.

40. The County has advised WCMIC that it disagrees with WCMIC's denial of indemnity coverage to the County in *Martin*. This coverage dispute in *Martin* has not been resolved.

### B. WCMIC's Intent to Deny Coverage to the County in this Case

41. WCMIC has indicated to the County that it intends to take the same coverage position here as it took against the County in *Martin*.

42. The Policy that applies to Plaintiff's claims in the underlying action has the same coverage provisions and the same exclusions as the Martin Policy. *See* the Policy, Ex. 1; Martin Policy, Ex. 2.

43. Plaintiff's Complaint alleges civil rights claims against various individual defendants who are employees of the County ("Individual Defendants") and the County, as well as a state law indemnification claim against the County. Specifically, the alleged claims include claims against the Individual Defendants under 42 U.S.C. § 1983 asserting a violation of the Fourteenth Amendment based on alleged denial of necessary medical and mental care and alleged

10

deprivation of the minimal civilized measure of life's necessities. The Complaint also alleges that the County is required to pay or indemnify all judgments awarded against the County Defendants.

44. The County timely tendered its claim for defense and indemnification of the claims asserted in Plaintiff's Complaint to WCMIC, and WCMIC accepted without any reservation of rights. WCMIC, through Aegis, assigned panel counsel Husch Blackwell LLP to represent the County in defense of the claims.

45. As in *Martin*, Plaintiff has alleged that County employees engaged in wrongful and criminal conduct.

46. Concerned WCMIC would improperly attempt to deny indemnification coverage to the County for the Plaintiff's claims in this case by imputing to the County any conduct the Individual Defendants are found to have committed, just as it did in *Martin*, the County contacted WCMIC in order to ascertain its coverage position in this case.

47. On December 14, 2017, the County's Corporation Counsel emailed counsel for WCMIC and asked WCMIC to confirm that the County is fully covered under the applicable Policy, up to the $10 million policy limit, for liabilities related to Plaintiff's indemnification claim, regardless of what coverage would or would not be provided to the County employees.

48. On December 15, 2017, counsel for WCMIC responded that WCMIC would not confirm coverage for the County under the Policy. WCMIC counsel specifically cited the penal exclusions in the Policy as the basis for refusing to confirm coverage.

49. Thus, WCMIC, through its actions in *Martin* and this matter, has indicated that, with respect to the claims in this case, it intends to argue that any alleged wrongful and criminal conduct committed by County employees in the scope of their employment in this case should be imputed to the County, and that it intends to invoke the penal exclusions based exclusively on that

11

imputation in order to deny coverage to the County for the indemnification claim in Plaintiff's Complaint.

### III. The Wrongful or Criminal Conduct of County Employees Cannot Be Imputed to the County for Purposes of Applying Policy Exclusions to Deny Indemnification to the County

50. On its face, the Policy prohibits the imputation of wrongful or criminal conduct of a County employee to the County and invocation of a Policy exclusion based solely on that imputation in order to deny indemnification to the County on Plaintiff's indemnification claim.

51. Section V of the Policy lists a number of exclusions to coverage, labeled A through P. Each exclusion indicates to what type of coverage it applies. Some exclusions apply only to one category of coverage, *e.g.*, *bodily injury* or *personal injury*. Others are more general and apply to all categories of coverage.

52. The exclusions WCMIC has cited as being potentially applicable to deny indemnification to the County for the indemnification claim in the *Martin* case are set forth in subsections L.3, N.3, and N.4 of Section V of the Policy. These exclusions provide as follows:

> This policy does not apply to:
> 
> \*\*\*
> 
> L. Personal Injury . . .
> 
> 3. Arising out of the intentional or knowing violation of a penal statute or ordinance committed by or with the consent of the *insured*.
> 
> However, any fact pertaining to any one *insured* shall not be imputed to any other *insured* for the purpose of determining the application of this exclusion.
> 
> \*\*\*
> 
> N. *Errors and omissions* liability resulting in or arising from: . . .
> 
> 3. The willful violation of a penal code or ordinance committed by or with the consent of any *insured*.
> 
> 4. Any deliberately wrongful act, omission or breach of duty committed by or with the consent of any *insured*. . . .

> However, any fact pertaining to any one *insured* shall not be imputed to any other *insured* for the purpose of determining the application of parts (3) (4) and (5) of this exclusion.

53. WCMIC ultimately improperly denied coverage to the County in *Martin* under the penal exclusion in subsection L.3.

54. Under the Policy, WCMIC cannot impute the wrongful conduct of a County employee to the County, invoke the penal exclusions based solely on that imputation, and use that as a basis to deny indemnity to the County on Plaintiff's indemnification claim.

### A. WCMIC Cannot Apply the Penal Exclusion in Subsection L.3 to the County Based on the Imputation of Conduct by a County Employee to the County

55. The penal exclusion in Section V, subsection L.3 of the Policy excludes coverage for personal injury "[a]rising out of the intentional or knowing violation of a penal statute or ordinance committed by or with the consent of the *insured*."

56. The penal exclusion in subsection L.3 expressly prohibits imputing the conduct of a County employee to the County for purposes of applying the exclusion: "any fact pertaining to any one *insured* shall not be imputed to any other *insured* for the purpose of determining the application of this exclusion."

57. WCMIC's position that it can impute the criminal conduct of a County employee to the County as a basis for applying this exclusion would effectively nullify this language from the Policy, and is invalid.

58. Thus, WCMIC cannot properly invoke this exclusion and deny indemnification to the County on the claims in this case solely by imputing to the County any intentional or knowing violation of a penal statute or ordinance, or any consent to such violation, by a County employee.

13

### B. WCMIC Cannot Apply the Penal Exclusion in Subsections N.3 and N.4 to the County Based on the Imputation of Conduct by a County Employee to the County

59. The penal exclusion in Section V, subsections N.3 and N.4 of the Policy exclude coverage for "*errors and omissions* liability resulting or arising from . . . (3) the willful violation of a penal code or ordinance committed by or with the consent of any *insured* [or] (4) any deliberately wrongful act, omission, or breach of duty committed by or with the consent of the any *insured*."

60. Like the exclusion in Section V, subsection L.3 of the Policy, these exclusions in Section V, subsections N.3 and N.4 expressly prohibit imputing the conduct of a County employee to the County for purposes of applying the exclusion, stating: "any fact pertaining to any one *insured* shall not be imputed to any other *insured* for the purpose of determining the application of parts (3) (4) and (5) of this exclusion."

61. Thus, WCMIC cannot properly invoke these exclusions and deny indemnification to the County on the claims in this case solely by imputing to the County any willful violation of a penal statute or ordinance, or any deliberately wrongful act, omission, or breach of duty, or consent to such act or omission, by a County employee.

62. Despite the express language of the Policy prohibiting it from doing so, WCMIC continues to take the invalid and improper position that such imputation can form the basis for invoking Policy exclusions and denying indemnification to the County on the indemnification claim.

### IV. WCMIC's Coverage Position Creates a Conflict of Interest and Jeopardizes the County's Rights and Interests in this Case

63. WCMIC's coverage position creates a conflict of interests between WCMIC and the County in this case. If the Policy were to be applied as WCMIC suggests, then WCMIC has

14

no stake in or exposure to any potential liability finding against the County on the indemnification claim in this case.

64. If a finding is made in this case that the Individual Defendants did not commit the alleged conduct, or that the Individual Defendants did commit the allege conduct but not within the scope of their employment, then there is no liability on the indemnification claim and, therefore, no obligation for WCMIC to indemnify the County for that claim. And if a determination is made in this case that the Individual Defendants did commit the alleged conduct and did so within the scope of their employment, then the County might be found liable for damages on the indemnification claim, based on the wrongful or criminal act of a County employee. WCMIC, invoking the penal exclusions and its imputation theory, would then deny indemnification to the County for the liability incurred on this claim.

65. Therefore, under WCMIC's interpretation of the Policy, regardless of whether the wrongful conduct alleged in the Complaint was committed by the Individual Defendants during the scope of their employment with the County, WCMIC will not have any liability for any damages resulting from such conduct. Whether the County wins or loses on the merits of the indemnification claim, WCMIC's position is that it owes nothing, as it does not have to provide coverage either way.

66. WCMIC's coverage position thus puts WCMIC in conflict with the County. WCMIC has much less incentive than the County to spend substantial resources to defend the County in the case and avoid the risk of a large verdict against the County—such as by vigorously pursuing discovery, hiring experts, and preparing diligently for trial—because, pursuant to its coverage position, WCMIC would have no liability for any damages the County is ordered to pay, while every dollar WCMIC spends in the County's defense is an actual lost cost to WCMIC. For the same reasons, WCMIC would also have little financial incentive to settle the case. Thus, from

15

a financial liability standpoint, WCMIC is incentivized to keep defense costs low, not to reduce the risk of a liability finding to the County or to pursue reasonable settlement.

67. In contrast, under WCMIC's coverage position, the County ultimately would have no insurance coverage for any verdict against the County on the indemnification claim and, thus, the County has a strong financial interest in vigorously defending the case and spending adequate resources to do so, as well as pursuing potential reasonable settlement.

68. Thus, WCMIC's invalid and improper imputation coverage theory creates a conflict of interest between WCMIC and the County in this matter. Yet, WCMIC presently is assuming exclusive and total control over the County's defense, including selecting the County's defense counsel, controlling and directing the appointed counsel's approach in litigation on what to do and not to do, and controlling any pursuit of settlement. WCMIC will have control over key trial strategy decisions, including which experts to retain and witnesses to present. WCMIC will also control all settlement negotiations with Plaintiff on behalf of the County, but with no financial stake in any potential adverse judgment, according to its coverage position.

69. In *Martin*, WCMIC exploited this conflict to the detriment of the County. First, WCMIC failed to assign independent counsel to represent the County. WCMIC assigned panel counsel Husch Blackwell, who was inherently loyal to WCMIC and—as even Husch Blackwell later admitted—was unable to put the County's interests over WCMIC's or its own on coverage issues. WCMIC has appointed the same counsel to defend the County in the underlying action. Second, WCMIC directed panel counsel's efforts in the *Martin* litigation to its benefit and not the County's. WCMIC and panel counsel cut costs wherever possible, excluded Corporation Counsel from important trial strategy decisions, and refused to negotiate settlement offers made by plaintiff's counsel knowing the County faced significant exposure if plaintiff prevailed.

16

70. To prevent WCMIC from using the same tactics here, the County seeks to resolve the same coverage dispute in this case *before* relinquishing exclusive control of its defense to a potentially conflicted insurer.

71. As long as WCMIC is allowed to apply its "imputation" theory to deny indemnity to the County on indemnification claims asserted against it, WCMIC will never have adequate financial stake in the outcome of the County's defense on the indemnification claim and the County's rights and interests will be jeopardized.

72. The dispute between WCMIC and the County creates an actual and justiciable controversy as to whether: (i) Plaintiff's indemnification claim against the County is covered under WCMIC's insurance policy coverage provisions and, accordingly, in the absence of any application of any Policy exclusion, WCMIC is obligated to indemnify the County for the indemnification claim; and (ii) in interpreting and applying the Policy exclusions in Section V, subsections L.3, N.3, and N.4 of the Policy, any conduct by a County employee can be imputed to the County where the conduct constitutes a willful, intentional, or knowing violation of any penal statute, or the consent thereof, or constitutes a deliberately wrongful act, omission, or breach of duty, or the consent thereof.

WHEREFORE, the County prays that it be granted the following relief:

a. That this Court, pursuant to Federal Rule of Civil Procedure 57, enter judgment finding and declaring:

   i. The indemnification claim alleged against the County in Plaintiff's Complaint falls within the bodily injury, personal injury, and/or errors and omissions coverage provided by the Policy and, therefore, in the absence of any application of any Policy exclusion, WCMIC is obligated under the Policy to indemnify the County for the indemnification claim;

ii. In interpreting and applying the Policy exclusions in Section V, subsections L.3, N.3, and N.4 of the Policy, the following conduct by a County employee cannot be imputed to the County for purposes of applying the exclusion to the County and denying the County indemnification:

(a) any conduct by a County employee constituting a willful, intentional or knowing violation of a penal statute, code, or ordinance, or consent to any such violation of a penal statute, code, or ordinance; or

(b) any deliberately wrongful act, omission, or breach of duty committed by or with the consent of a County employee.

b. That this Court enter any other relief that it finds just and appropriate.

Respectfully submitted

By: /s/ Dan K. Webb
Dan K. Webb, IL Bar No. 2954087*
Robert L. Michels, IL Bar No. 6199242*
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
Fax: (312) 558-5700
dwebb@winston.com
rmichels@winston.com

*admitted to the E.D. Wis.

ATTORNEYS FOR COUNTY OF MILWAUKEE